IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02477-WJM-KLM

JOSEPH WARR,

    Plaintiff,

v.

ARISTEDES W. ZAVARAS,
CAPTAIN GONZALEZ,
RICHARD BOLDRIDGE,
IVETT RUIZ, and
LT. GERALD SCRUGGS,

    Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 65; Filed June 28, 2011] (the "Motion"). Plaintiff filed a Response in opposition to the Motion on August 11, 2011 [Docket No. 71], and Defendants filed a Reply on August 25, 2011 [Docket No. 72]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for recommendation [Docket No. 66]. The Court has reviewed the Motion, Plaintiff's Response, Defendants' Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED** and judgment be entered in favor of Defendants.

1

## I. Summary of the Case and Procedural Background

The Court incorporates by reference the Summary of the Case stated in its Recommendation issued July 14, 2010 [Docket No. 39] ("July 14, 2010 Recommendation"). The District Court approved the Recommendation in its entirety on April 29, 2011 [Docket No. 62] ("April 29, 2011 Order"). The April 29, 2011 Order dismissed Plaintiff's Claims II and III with prejudice, as barred by the applicable statute of limitations. *Ord.*, Docket No. 62 at 5. Claim I survived. *Id.*

In Claim I, Plaintiff alleges that Defendants have violated his First Amendment rights by preventing Plaintiff from receiving sexually explicit reading materials while incarcerated. Specifically, Plaintiff asserts that he is not permitted to receive and possess a Victoria's Secret catalogue.[1] As explained in the July 14, 2010 Recommendation, Plaintiff is classified as a sex offender by the Colorado Department of Corrections ("CDOC"). The prohibition of sexually explicit reading materials in Plaintiff's possession, including the Victoria's Secret catalogue, arises from this designation. *Ord.*, [#62] at 1-2.

In the July 14, 2010 Recommendation, the Court considered the four factors enumerated in *Turner v. Safley*, 482 U.S. 78 (1987) in relation to Plaintiff's Claim I, as follows:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the rights are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

---

[1] Victoria's Secret is a clothing retailer which specializes in women's undergarments and whose catalogue contains photographs of female models displaying such undergarments.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing *Turner*, 482 U.S. at 89-91). The Court determined that the first two *Turner* factors fell squarely in Defendants' favor upon review of the regulation limiting Plaintiff's access to sexually oriented reading materials. However, the Court could not fully evaluate factors three and four on the record before it at that time.

Concerning factor three pertaining to the impact on the correctional facility and other inmates of accommodating Plaintiff's request to keep the Victoria's Secret catalogue, although Defendants had articulated a legal argument in relation to this factor, the Court concluded that it could not make a lawful determination on the issue, in the absence of undisputed evidence as to how providing Plaintiff with sexually explicit reading material would impact Plaintiff's rehabilitation or the prison's security. *Rec.*, [#39] at 19. The same held true for the fourth factor concerning whether reasonable alternatives to the regulation in dispute exist. The Court determined that this issue could not be resolved in the context of the Motion to Dismiss. *Id.* at 20. Thus, *Turner* factors three and four remain before the Court, limited to Plaintiff's Claim I.

Defendants included an Affidavit of Burl McCullar, the Program Manager of the CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP"), with their Motion at issue. *See* [#65]; *see also Aff.*, Docket No. 74 at 1-7. Defendants utilize Mr. McCullar's testimony, as well as the at-issue administrative regulation ("AR"), AR 300-26, and its accompanying Form 300-26E governing Sex Offender Restrictions, as evidentiary support for their assertions regarding application of the four *Turner* factors. Regarding the third *Turner* factor, Defendants contend that allowing prisoners such as the Plaintiff in this matter to have materials containing sexual content would adversely affect guards and other

3

offenders, "because the materials that sex offenders are prohibited from possessing are restricted because these materials may exacerbate a sex offender's propensity for acting out, either sexually or violently." [#65] at 4. Mr. McCullar explained in his affidavit that acting out implicates the victimization, potentially physical and emotional, of other individuals with whom the restricted prisoner may come into contact. *Id.* Furthermore, acting out may "disrupt normal prison operations, burden staff by requiring prison staff intervention to restore order and discipline, and place staff members intervening in such incidents at risk of injury and assault." *Id.* at 5, 9-10.

Regarding the fourth *Turner* factor, Defendants contend that Plaintiff bears the burden of identifying "ready alternatives to the reading restriction that would show that the regulation constitutes an exaggerated response." *Id.* at 10 (citing *Mauro v. Arpaio*, 188 F.3d 1054, 1062 (9th Cir. 1999)). Defendants explain that Plaintiff is not prohibited from possessing reading materials that do not include sexual content. *Id.* Defendants believe that no other ready alternatives exist that would "enable Defendants to advance the rehabilitative goal of preventing [sexual] materials from exacerbating Plaintiff's propensity as a sex offender to act out violently and sexually." *Id.* Therefore, Defendants submit that all four of the *Turner* factors support the imposition of the regulation at issue, Plaintiff's Claim I is meritless, and the Court should enter summary judgment in their favor.

In response, Plaintiff does little more than restate his arguments disposed of by the July 14, 2010 Recommendation and April 29, 2011 Order. *See* Docket No. 71. Plaintiff again challenges the administratively-determined sex offender designation as unconstitutional, and asserts that the restriction on reading materials with sexual content should not apply to administratively (as opposed to judicially) determined sex offenders.

4

*Id.* at 2-3. Plaintiff contends that he does not have "an existing problem which requires a restriction," and in any event, the Victoria's Secret catalogue does not meet the requirements set forth in the applicable administrative regulation. *Id.* at 3-4. Plaintiff avers that he views pictures of children, women in television shows, other inmates' reading materials, and female guards on a daily basis; thus, prohibiting him from possessing a Victoria's Secret catalogue is inconsistent with the allegedly lax enforcement of the administrative regulation at issue. *Id.* at 4.

In reply, Defendants assert that the factual statement recited in their Motion stands materially undisputed by Plaintiff. Docket No. 72 at 1-2. Defendants emphasize that the administrative regulation providing the authority for the reading restriction at issue satisfies the legitimate penological interest test as stated in *Turner*. *Id.* at 2. Defendants briefly touch on each of Plaintiff's arguments, and reiterate the "widespread agreement among the circuits upholding bans on sexually-explicit material, even for non-sex offenders." *Id.* at 4-5.

## II. Statement of Undisputed Facts

Pursuant to Fed. R. Civ. P. 56(c), when submitting a motion for summary judgment for the Court's review, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents [and] affidavits." If the responding party (here, Plaintiff) "fails to properly address [the movant's] assertion of fact as required by Rule 56(c)," the Court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Defendants included a "Statement of the Facts" in their Motion. [#65] at 2-5. Review of Plaintiff's response demonstrates to the Court that Plaintiff offers primarily legal

arguments in opposition to the Motion; Plaintiff proffers no substantive challenge to the statement presented by Defendants. *See* [#71]. The Court, after review of Defendants' statement of facts and accompanying evidentiary support, concludes that Defendants' statement is properly supported and stands undisputed. The Court recommends finding that the following facts are undisputed:

1. All offenders who are received by the CDOC are given a sex offender classification rating that is used by the CDOC to assess their treatment and rehabilitation needs. *Aff.*, Docket No. 74 at 1, ¶ 4. The sex offender classification is set forth by CDOC Administrative Regulation 700-19, which rates offenders on a five-level sexual violence scale:

- S-5: Any judicial determination of sex offense.
- S-4: Any administrative determination of sex offense to include prior sexual violence needs classification review.
- S-3: Any institutional determination of sex offense behavior to include facility disciplinary convictions.
- S-2: Unadjudicated sex abuse allegation.
- S-1: No arrests or reports indicating sex offense behavior.

*Id.*; *Attach. 1*, Docket No. 74 at 9.

2. An S-5 sex offender classification is given to offenders who have been convicted of a sex offense in a criminal case. *Id.*

3. An S-4 sex offender classification is given to offenders who may not have been criminally convicted of a sex offense, but who may have been classified as sex offenders through an administrative hearing process. *Id.* Offenders who receive either an S-5 or S-4 sex offender classification are generally recommended for treatment in the SOTMP. *Aff.*, Docket No. 74 at 2, ¶ 6.

6

4. Plaintiff was classified as an S-4 sex offender after an administrative review. *Id.* at 2, ¶ 8.

5. In addition to the recommendation that Plaintiff undergo the SOTMP, the CDOC placed restrictions on Plaintiff's access to certain reading materials as a result of his classification as a sex offender. *Id.* at 2, ¶ 9.

6. Plaintiff is subject to the restrictions on reading materials that are based upon best practices as articulated by the Colorado SOTMP Management Board's "Standards and Guidelines for Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders." *Id.* at 2, ¶ 10.

7. Specifically, sex offenders such as Plaintiff are generally restricted from possessing:

   a. Sexually explicit material as defined by AR 300-26.
   b. Pornographic material: Materials that show unclothed genitals, buttocks or female breasts.
   c. Material that has significant risk of escalating the sex offender's deviant sexual arousal or their cycle of abuse – for example, pictures of scantily clothed individuals who are depicted being humiliated, subject to an act of violence, being restrained, objectified, being otherwise degraded, or pictures of the offender's victim.
   d. Material that depicts or by way of description promotes criminal sexual behavior.
   e. Pictures related directly to a potential victim pool of the individual offender, such as collections of pictures of children by pedophiles.

*Id.* at 3, ¶ 11; *see also Attach. 2*, Docket No. 74 at 31.

8. The reason for the restriction on sexually explicit reading materials is articulated in AR 300-26, Form 300-26E Sex Offender Restrictions. *Aff.*, Docket No. 74 at 3, ¶ 12; *Attach. 2*, Docket No. 74 at 31.

7

9. As set forth in the regulation, the reason for the restriction is because "research has shown that although pornography does not cause people to become sex offenders, it can exacerbate existing problems for sex offenders and can increase their potential for acting out, either sexually or violently. Therefore, pornography is contrary to rehabilitative goals." *Aff.*, Docket No. 74 at 3, ¶ 13.

10. As a result, in order to further the rehabilitation of sex offenders such as Plaintiff, as well as to protect the safety and security of others, the CDOC imposes restrictions on their possession of or subscription to sexually-oriented and pornographic materials. *Id.* at 5, ¶ 15.

11. If sex offenders such as Plaintiff were permitted to have materials containing sexual content it would have an adverse impact on guards and other offenders, and potentially upon members of the public. *Id.* at 5, ¶ 16.

12. This is because the materials that sex offenders are prohibited from possessing are restricted because these materials may exacerbate a sex offender's propensity for acting out, either sexually or violently. *Id.* at 5, ¶ 17.

13. When incarcerated sex offenders act out, sexually or violently, they victimize other offenders, prison staff, or other individuals with whom they come into contact. This also includes volunteers, visitors to the prison, and the families and friends of other offenders. The increased likelihood of acting out places these individuals in physical jeopardy and could cause them to suffer emotional and mental distress. *Id.* at 5, ¶ 18.

14. Further, incidents of violence or sexually acting out in prison disrupt normal prison operations, burden staff by requiring prison staff intervention to restore order and discipline, and place staff members intervening in such incidents at risk of injury and

assault.  *Id.* at 6, ¶ 19.

15.  Incidents of acting out sexually or violently also have a negative impact on the rehabilitation of the sex offender and can increase the likelihood of recidivism. Thus, acting out sexually or violently would be inimical to Plaintiff's rehabilitation, which could increase the risk that Plaintiff might assault a future victim when he is released from the CDOC.  *Id.* at 6, ¶ 20.

16.  In addition, if Plaintiff were to act out sexually or violently toward another offender, this could negatively affect the rehabilitation of that offender, and could encourage that offender to act out sexually or violently as well.  *Id.* at 6, ¶ 21.

17.  Though Plaintiff's access to reading materials containing sexual content is restricted, his access to reading materials is not otherwise restricted as a result of his sex offender classification.  *Id.* at 6, ¶ 22.

18.  In September of 2010, Plaintiff received a Victoria's Secret Catalogue through the mail. This item was reviewed by the facility Reading Committee where Plaintiff was incarcerated to determine whether Plaintiff would be permitted to have this publication in light of the reading restrictions imposed upon him.  *Id.* at 6, ¶ 23.

19.  The facility Reading Committee determined that Plaintiff should not be permitted to have this item because multiple pages of the Victoria's Secret catalogue contained pictures of women wearing only undergarments, and it therefore contained restricted sexually oriented material.  *Id.* at 6, ¶ 24.

### III.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869,

875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Amended Complaint [#7] and Response (actually titled as a reply) [#71], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring

11

the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

## IV. Analysis

"The First Amendment protects a prisoner's right to receive mail." *Frazier v. Ortiz*, 417 F. App'x 768, 773 (10th Cir. 2011) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). This right may be regulated by prison officials if the regulation satisfies the above-stated four-part test prescribed by *Turner*. *Frazier*, 417 F. App'x at 773-74 (citing *Turner*, 482 U.S. at 89-90). "Courts must conduct this analysis giving substantial deference to prison authorities." 417 F. App'x at 774 (citation and internal quotation omitted).

### A. The Court's Previous Determination

In brief, the Court previously held that the CDOC's regulation at issue, AR 300-26 and its accompanying Form E, which imposes reading privileges limitations on inmates designated as sex offenders (judicially or administratively), is rationally connected to a legitimate government interest, in satisfaction of the first *Turner* factor. The purpose and goal of monitoring inmate reading material is stated in the regulation; namely, that it is premised on "respect[ing] and respond[ing] to the reading needs and preferences of offenders, consistent with the security needs and good order of DOC's facilities and offices, public safety, and rehabilitative goals set for the offender." [#74] at 19. Safety and

rehabilitation in prison are clearly legitimate goals. *See Thornburgh*, 490 U.S. at 415 (safety); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (rehabilitation). On its face, the regulation provides a "valid, rational connection" between its prohibitions and the goals of maintaining safety and order and promoting rehabilitation among sex offenders.

Regarding the second *Turner* factor, the Court determined that the regulation permits "a broad range of publications to be sent, received, and read." *Thornburgh*, 490 U.S. at 418. Thus, the second factor "is clearly satisfied." *Id.*

"Generally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Been v. O.K. Indust., Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007). The policy underlying this doctrine is judicial efficiency, and the doctrine is discretionary, insofar as the Court "generally remain[s] free to reconsider [its] earlier interlocutory orders." *Been,* 495 F.3d at 1225. Here, nothing Plaintiff presents in his Response demonstrates to the Court that its earlier Recommendation (which was approved in full) regarding the first and second *Turner* factors should be reconsidered. The underlying policy of the law of the case doctrine is satisfied; judicial efficiency dictates adherence to the Court's July 14, 2010 Recommendation and April 29, 2011 Order.[2] Therefore, the Court proceeds to evaluate Defendants' Motion at issue as to only the third and fourth *Turner* factors, in relation to Plaintiff's remaining Claim I.

---

[2] Neither Plaintiff nor Defendants objected to this Court's Recommendation as to Plaintiff's Claim I. The District Judge reviewed the Recommendation and found no clear error; thus the Court adopted the Recommendation as to Claim I in full. *See* [#62] at 3.

### *B. The Third Turner Factor*

The third *Turner* factor concerns whether allowing Plaintiff to have sexually explicit reading materials would have an adverse impact on the facility, Plaintiff, and other inmates. The Court declined to previously make a conclusive recommendation on this consideration, in the absence of undisputed evidence demonstrating how providing Plaintiff with sexually explicit reading material would impact Plaintiff's rehabilitation or the prison's security. With the Motion at issue, however, Defendants include the testimony of Mr. McCullar (who, as explained above, is the CDOC's SOTMP Program Manager) in addition to the language stated in the regulation itself, in support of their position.

As set forth in AR Form 300-26E, "[r]esearch has shown that although pornography does not cause people to become sex offenders, it can exacerbate existing problems for sex offenders and can increase their potential for acting out, either sexually or violently. Therefore, pornography is contrary to rehabilitative goals." [#74] at 31. Mr. McCullar explains that allowing sex offenders (such as Plaintiff) to have materials containing sexual content would "exacerbate the sex offender's propensity for acting out, either sexually or violently." *Aff.*, [#74] at 5, ¶¶ 16-17. Acting out, in turn, victimizes "other offenders, prison staff, or other individuals with whom they come into contact. This also includes volunteers, visitors to the prison, and the families and friends of other offenders." *Id.* at 5, ¶ 18. Additionally, Mr. McCullar avers that the misbehavior of sex offenders places prison staff at risk of injury and requires additional monitoring of offender behavior, as it "disrupt[s] normal prison operations." *Id.* at 6, ¶ 19. Sexual or violent acting out further negatively impacts the rehabilitation of the sex offender, as well as the rehabilitation of other offenders. *Id.* at 6, ¶¶ 20-21.

In light of Mr. McCullar's testimony, which stands undisputed, the Court concludes that accommodating Plaintiff's request for access to reading materials with sexual content has the potential to adversely affect prison staff, other offenders, visitors to the prison, and Plaintiff himself. "Where, as here, the right in question can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, the courts should defer to the informed discretion of corrections officials." *Thornburgh*, 490 U.S. at 418 (internal quotation and citation omitted). The correctional facility's Reading Committee determined that Plaintiff should not be permitted to keep a Victoria's Secret catalogue, because "multiple pages . . . contained pictures of scantily clad women wearing only undergarments, [which is] restricted sexually oriented material." [#74] at 6, ¶ 24. As the exercise of the First Amendment right in the circumstances before the Court carries with it serious and negative consequences to others at the correctional facility, the Court defers to the discretion of the Reading Committee decision to confiscate the Victoria's Secret catalogue from Plaintiff. Moreover, aside from Plaintiff's self-serving statement that the facility would not be adversely impacted if he were allowed to view the Victoria's Secret catalogue, he has offered no evidence to dispute Defendants' contrary evidence. *See, e.g., Wallin v. Dycus*, No. 03-cv-00174-CMA-MJW, 2009 WL 2490127, at *5 (D. Colo. Aug 13, 2009) (unpublished decision) (noting that a plaintiff "cannot defeat a motion for summary judgment by standing on his own unsupported, self-serving allegations"). The Court finds that the third *Turner* factor is satisfied.

### C. The Fourth Turner Factor

The fourth and final *Turner* factor relates to whether Defendants' response to the stated security and rehabilitative concerns implicated by Plaintiff's access to a Victoria's

Secret catalogue is exaggerated, given the existence of "obvious, easy alternatives . . . to fully accommodate the prisoner's rights at *de minimus* cost." *Turner*, 482 U.S. at 90-91. Defendants correctly assert that Plaintiff bears the burden of identifying alternatives to the regulation at issue. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Thornburgh*, 490 U.S. at 418. Here, Plaintiff "points to no alternative that fully accommodates his rights while at the same time imposing de minimis cost to valid penological interests." *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1156 (10th Cir. 2007). In fact, Plaintiff fails to suggest any alternative at all. *See* Docket No. 71. Thus, the Court finds that the fourth *Turner* factor weighs in favor of upholding the regulation at issue.

### *D. Summary*

In sum, a rational connection exists between the CDOC's regulation governing restricted reading privileges for sex offenders and the legitimate governmental interest stated by its plain language; Plaintiff may access a broad range of reading materials, despite the prohibition of reading materials with sexual content; accommodating Plaintiff's alleged exercise of his First Amendment rights implicates a strong potential to adversely affect prison staff, other inmates, and himself; and Plaintiff fails to offer an easy and cost-effective alternative to the regulation he challenges. The *Turner* factors favor upholding AR 300-26 and its accompanying Form E, both facially and as-applied to Plaintiff here. Accordingly, Defendants have met their burden of demonstrating that no genuine issue of material fact remains as to the question presented by Plaintiff's Claim I, and summary

judgment should be entered in their favor.

## V. Conclusion

For the aforementioned reasons and the record in its entirety, the Court respectfully **RECOMMENDS** that **Defendants' Motion for Summary Judgment** [#65] be **GRANTED** and judgment be entered in favor of Defendants as to Plaintiff's remaining Claim I.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 4, 2011

BY THE COURT:

/s/ Kristen L. Mix

Kristen L. Mix
United States Magistrate Judge